# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| DWAYNE NABORS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.: 1:14-CV-171 |
| | ) |
| CRST MALONE, INC., and | ) |
| CRST INTERNATIONAL, INC., | ) |
| | ) |
| Defendants. | |

## OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by Defendants CRST Malone, Inc., and CRST International, Inc., (collectively "CRST" or Defendants) (DE 21). Plaintiff Dwayne Nabors filed a response in opposition (DE 23) and CRST filed a reply (DE 25). For the reasons discussed below, the motion is DENIED.

## BACKGROUND

Nabors was employed by CRST as a truck driver beginning in 2011. Nabors was an independent contractor and leased a truck from CRST on a "lease to own" basis. On May 16, 2012, Nabors fell asleep while driving and crashed the truck. He alleges that he sustained multiple injuries in the crash, including "a fractured eye socket, cervical disc damages and injuries to his left shoulder and left knee." Plaintiff's Response, p. 4. Nabors contends that "[t]he accident has left Plaintiff permanently disabled and he can no longer work to support his family." *Id*. Nabors filed this lawsuit claiming that CRST is liable for his injuries because the trucking company "was negligent in allowing Plaintiff to operate a vehicle in excess of the maximum amount of on duty hours allowed by the Federal Trucking Regulations, maintaining a culture of noncompliance with Federal Trucking Regulations, and failing to maintain safeguards

to ensure that their property carrying motor vehicle drivers complied with Federal Trucking Regulations." *Id*. More specifically, Nabors contends that CRST forced him (and other drivers) to be "on duty more hours than allowed by federal regulations . . ." and that because of this policy he was exhausted, fell asleep while driving, and was injured as a result. *Id*.

CRST maintains that summary judgment is appropriate in this case for two reasons, which the company summarizes as follows:

> 1. Because Plaintiff . . . did not disclose any expert witnesses and the Court's Order dated February 20, 2015, excludes the Plaintiff from offering any testimony at trial as to causation of his injuries, the Plaintiff is unable to establish a *prima facie* case of negligence.
>
> . . .
>
> 2. Plaintiff's cause of action lacks any evidentiary support and is entirely based [on] speculation, conjecture, and conspiracy theories.

Motion for Summary Judgment, p. 1. Since Nabors did not list physicians as potential expert witnesses on the issue of causation, CRST filed a motion to motion to exclude him from offering any expert testimony on the issue of causation (DE 18). Magistrate Judge Susan L. Collins, to whom this case is on partial referral, granted CRST's motion (DE 20). (Nabors never filed a response in opposition to that motion.)

Nabors identified several physicians who treated him after the accident and listed them in his Fed.R.Civ.P. 26(a)(1) initial disclosures as potential witnesses who would be "'called to testify regarding the injuries sustained by Mr. Nabors and his subsequent treatment.'" Court Order (DE 20), p. 3 (quoting CRST's Motion to Exclude Plaintiff from Offering any Expert Testimony on the Issue of Causation). What Nabors failed to do, however, was list these physicians as experts who would testify that the accident was the proximate cause of his injuries,

even though he was required to do so pursuant to Fed.R.Civ.P. 26(a)(2)(C), or to provide expert reports as required by Fed.R.Civ.P. 26(a)(2)(B). CRST filed its motion to prevent these witnesses from testifying as to causation. Nabors "opted not to respond to CRST's motion seeking to exclude him from offering expert testimony on the issue of the causation[.]" *Id*. Accordingly, because he did not properly list the doctors as experts by the court-imposed deadline and did not respond to CRST's motion to prevent them from testifying as to causation, Magistrate Judge Collins granted CRST's motion. CRST now moves for summary judgment on Nabor's negligence claim, arguing that since he has no experts to testify as to causation, he cannot prove that prong of a *prima facie* negligence claim. CRST states that "[b]ecause causation is a necessary element to a claim of negligence, the Plaintiff will be unable at trial to meet his burden of proof to establish a claim of negligence against the Defendants." Memorandum in Support of Motion for Summary Judgment (DE 22), p. 7.

CRST also argues that summary judgment is warranted since "Nabor's theory of liability against [CRST] is entirely relied upon [sic] by speculation, conjecture, and/or conspiracy theories that are unsupported by any affirmative evidence." *Id.*, p. 9. CRST maintains that the company did not force Nabors to drive more hours than permitted by federal regulation, that he did so of his own accord, and that his attempts to characterize CRST as negligent are based only on speculation and conjecture, which is insufficient to sustain a negligence action under Indiana law.

Nabors opposes CRST's motion by arguing that "expert testimony is not needed to establish causation in cases where a layperson can understand what caused the injury[,]" that he has presented sufficient "affirmative evidence that creates a genuine issue of material fact" about

3

CRST's negligence, and that this evidence is based on much more than just speculation and conjecture. Plaintiff's Response in Opposition to Motion for Summary Judgment (DE 23), pp. 8-11.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248. In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual

dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

**DISCUSSION**

To prevail on a claim for negligence under Indiana law, a plaintiff must prove: (1) the defendant owed the plaintiff a duty of care at the time the injury occurred; (2) the defendant's behavior did not conform to that standard of care; and (3) the plaintiff's injuries were proximately caused by the defendant's breach of the duty of care. *Neal v. Cure*, 937 N.E.2d 1227 (Ind.App. 2010). It is CRST's position that Nabors fails to present sufficient evidence to prove, or even raise a genuine issue about, the second and third elements of a negligence action.

5

That is, he cannot establish that CRST breached any duty it owed to him since his allegations on that point are based only on speculation and unsupported conclusions; and he cannot establish that any such breach was the proximate cause of his injuries since he lacks any expert testimony on that point. The court disagrees with CRST's arguments and determines that there are genuine issues of material fact, with regard to both breach of duty and proximate cause, that preclude summary judgment.

**I. Proof of Causation.**

As explained above, CRST contends that since Nabors is now prohibited from presenting expert medical testimony on the issue of causation, his entire case fails even at the summary judgment stage. In support of this argument, CRST relies in large part on the case of *Myers v. Ilinois Central R. Co.*, 629 F.3d 639 (7th Cir. 2010). CRST states that "expert testimony is required when there is no obvious origin to an injury and the injuries have 'multiple potential etiologies.'" Defendants' Memorandum, p. 8 (quoting *Myers*, 629 F.3d at 643). CRST concedes that the *Myers* opinion also held that expert testimony is *not* necessary in cases where a plaintiff's injuries are clearly attributable to an accident. CRST admits that "[i]f a plaintiff suffers a broken leg or a gash when hit by a vehicle, courts have held that the plaintiff would not need to produce expert testimony." *Id*. (citing *Myers* and *Moody v. Main Central RR Co.*, 823 F.2d 693 (1st Cir. 1987)). But CRST goes on to argue that "injuries such as cervical strains, degenerative disease, bulging disks, or torn ligaments, which all have multiple potential etiologies, including the prospect of pre-existing conditions, expert testimony is required in order for the jury to consider what injuries are related to the accident and which are not." *Id*. (citations omitted). Finally, CRST contends that "[i]n *Myers*, the court determined that problems with

knees, elbows, backs, and necks which may be the cause of pre-existing conditions, must be proven by expert testimony because a layman could not discern the specific cause of those injuries." *Id*. CRST states that since Nabors "suffered cervical disk damage, left shoulder AC joint separation, and meniscus tear in [his] left knee[,]" his injuries are of the sort that can only be proximately linked to the accident by way of expert testimony.

In *Myers*, the plaintiff was employed by the defendant railroad for almost 30 years. He was forced to retire when he could no longer perform his job due to numerous injuries he suffered during the course of his employment. The plaintiff sued his former employer under the Federal Employers' Liability Act (FELA), alleging that the railroad had failed to provide a sufficiently safe workplace and that that failure was the proximate cause of his injuries. Mr. Myers's condition, however, resulted from "several injuries, including cumulative trauma disorders . . ." that occurred over the course of almost three decades. *Myers*, 629 F.3d at 640. The defendant railroad contended that Mr. Myers must present expert medical testimony that his debilitating injuries were proximately caused by the alleged failure of the defendant to maintain a safe work environment. The district court ruled that Mr. Myers could not present such evidence since the experts he designated for that purpose did not meet the standard enunciated in *Daubert v. Merrell Dow Pharmaceuticals*, 509 US. 579 (1993). The railroad then moved for summary judgment, which the district court granted, on the basis that Mr. Myers had no admissible expert testimony on the issue of causation and therefore could not establish a *prima facie* case of negligence.

In his response, Nabors says that "[a]s a result of the accident, [he] suffered a fractured right eye socket, cervical disc damage and injuries to his left shoulder and left knee." Plaintiff's

Response, p. 4 (citing Nabors Deposition, DE 24, p. 24). Nabors argues that the nature of his injuries are such that "the origins of his injuries would be obvious to a member of the jury. Prior to the May 2010 accident Plaintiff had no fractured eye socket, torn ligament in his shoulder, cervical disk damage or torn meniscus in his knee. Plaintiff began to suffer from each of these conditions and became permanently disabled, immediately after the May 2012 accident." *Id.*, p. 8. In support of his argument, Nabors cites the case of *Foddrill v. Crane*, 894 N.E.2d 1070 (Ind.Ct.App. 2008), which he argues "is more comparable to the current case than *Myers* . . . ." *Id.* Nabors points out that in *Foddrill*, the court held that "'[w]hen an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without medical testimony.'" *Id.* (quoting *Foddrill*, 894 N.E.2d at 1077). Nabors concludes by arguing that his "injuries are clearly objective and not so complex that a layperson could not understand the causal connection without expert testimony. Plaintiff was diagnosed with each of [his] injuries the day after the accident . . . Any layperson would be able to make the connection between Defendant's negligence and Plaintiff's injuries without the need for expert testimony." *Id.*, p. 9.

While the Seventh Circuit affirmed the district court's grant of summary judgment under the facts presented in *Myers*, the holding in the case is not as directly on point as CRST contends that it is. It is true that the court held that "unless the connection between the negligence and the injury is a kind that would be obvious to laymen, expert testimony is required." *Myers*, 629 F.3d at 642. But the Seventh Circuit noted in *Myers* that "neither Myers nor his physicians could point to a specific injury or moment that brought on the problems with his knee, elbow, and back and neck. Instead, Myers claims that *they are the product of years working for the Railroad.*" *Id.* at

8

643 (italics added). The court observed that Mr. Myers suffered from "cumulative trauma injuries" and that "'[c]umulative trauma disorder refers not to one specific injury, but to numerous disorders caused by the performance of repetitious work over a long period of time.'" *Id*. (quoting *Gutierrez v. Excel Corp.*, 106 F.3d 683, 685-86 (5th Cir. 1997)). The *Myers* court concluded that "[f]or most cumulative trauma injuries, courts follow the general principle that a layman could not discern the specific cause and thus they have required expert testimony about causation." *Id*.

Nabors argues that *Myers* is inapplicable because he "is not claiming that he suffers from multiple injuries that occurred over the course of his career with Defendant. In this case, the Plaintiff was injured in a trucking accident in which the truck he was driving flipped over. After the accident Plaintiff was treated at the emergency room and by other physicians and diagnosed as having a fractured eye socket, cervical disc damage, a torn meniscus in his knee and a torn ligament in his shoulder. All of these injuries were caused by the trauma of the accident." Plaintiff's Response, pp. 7-8. So, argues Nabors, jurors would be able to understand the nature of his injuries and determine the issue of causation without the need for expert testimony. Thus, Nabors contends that this case is much more akin to the situation in *Foddrill*, in which the court held that expert causation testimony was not necessary due to the objective nature of the plaintiff's injuries.

In its reply brief, CRST states that it's "retained expert, John Williams, M.D., opined that the Plaintiff's need for surgery was caused by his significant pre-existing injuries, not by the accident." Defendants' Reply, p. 2. That may be, and CRST can present Dr. Williams' testimony to the jury. But just because CRST's retained expert holds this opinion does not automatically

9

render Nabors' injuries subjective or cumulative. Nabors can testify about his physical condition before and after the accident and can present the testimony of doctors to explain what treatment he received for his injuries and when (although obviously they will not be permitted to testify as to the ultimate issue of causation). Given the nature of Nabors' claimed injuries, the court concludes that jurors would be able to determine whether and to what degree they were caused by the accident. Nabors will present testimony about his injuries and, presumably, Dr. Williams will present testimony about any pre-existing conditions Nabors may have had. Summary judgment on this issue, however, is inappropriate. It is the duty of the jury, not this court, to weigh and assess the testimony of Nabors and of Dr. Williams on the issue of Nabors' injuries. A jury could conclude that some or all of Nabors' injuries were sustained in the crash and still find, based on Dr. Williams' expert testimony, that some of the medical treatment Nabors received following the accident was necessitated by pre-existing medical conditions. At that point, of course, the issue would morph into one of damages, which is also the province of the jury. CRST's attempt to apply the holding in *Myers* to the facts of the present case suffers from "square peg, round hole" syndrome–it just doesn't fit. Accordingly, summary judgment in favor of CRST is not warranted.

**II. Breach of Duty.**

CRST also argues that Nabors cannot establish that the company breached a duty to him. Specifically, the company argues that "Nabors' allegation of negligence against Defendants centers on whether Defendants maintained a culture of non-compliance with the trucking regulations such that Nabors was forced to violate the daily and weekly hourly maximums. Nevertheless, Nabors' theory of liability against the Defendants is entirely [based on]

speculation, conjecture, and/or conspiracy theories that are unsupported by any affirmative evidence." Defendants' Memorandum, p. 9.

In his Complaint, Nabors alleges that CRST breached its duty to maintain a safe work environment in that the company "made no efforts to ensure that Plaintiff's on duty hours did not exceed the maximum amount allowed by law . . ." that "[d]ue to Defendants' negligent failure to ensure that Plaintiff's hours did not exceed the allotted amount of on duty hours allowed by Federal Trucking Regulations, Plaintiff's on duty hours for the week of May 16, 2012, exceeded the allotted [70 hour] maximum allowed . . ." and that "[a]s a result of Defendants' negligence, Plaintiff fell asleep at the wheel of his vehicle" causing the crash and "causing Plaintiff great physical injury." Defendants' Memorandum, Exh. A (DE 22-1), Plaintiff's Complaint, pp. 2-3.

CRST, in support of its argument that Nabors' breach of duty allegations are based only on speculation, conjecture, and "conspiracy theories," references statements and admissions Nabors made during his deposition that the company says contradict his allegations. Those statements include the follwing:

> 1. Nabors does not know whether he ever told any one at CRST that he needed to stop and rest because he was at his daily hourly maximum. *Id.* (citing Nabors Deposition, Exh. C, p. 58).
>
> 2. No one at CRST ever threatened to fire Nabors if he did not violate the trucking regulations. *Id.*
>
> 3. No one at CRST ever threatened to cut Nabors' pay if he did not violate the trucking regulations. *Id.*
>
> 4. Nabors admitted that he could have turned down any trip that he believed would cause him to exceed the maximum daily or weekly hour requirements set forth in the trucking regulations. *Id.*, p. 59.
>
> 5. Nabors admitted that he willingly and knowingly chose to violate the trucking regulations because he was under financial duress. *Id.*

11

6. While Nabors contends that CRST's use of paper logs suggests that "CRST looks the other way on logbooks," Nabors acknowledged that in 2012 there were other companies that used paper logs. *Id.*, p. 60.[1]

7. Nabors admitted he accepted trips that he knew would violate the trucking [regulations]. *Id.*, pp. 66-67.

8. Nabors admitted that he accepted jobs that he knew exceeded the maximum hourly requirements knowing that he was endangering the public by violating the trucking regulations and that he so chose [sic] knowingly and willingly. *Id.*, p. 68.

9. Nabors acknowledged that he could have left employment at CRST to find another trucking or non-trucking job. *Id.*

10. Nabors admitted that he under reported his hours in his logbooks so that he could accept more jobs and make more money, not because anyone from CRST asked him to. *Id.*, p. 80.

Defendants' Memorandum, pp. 11-12. CRST argues that these admissions demonstrate that "Nabors' decision to violate trucking regulations was made solely on his own accord[.]" and that CRST did nothing to mandate or encourage Nabors (or any other driver in its employ) to drive more hours than federal regulations allow. Consequently, CRST did not breach any duty to Nabors and his negligence claim must fail as a matter of law. *Id.*, p. 12.

In further support of its position that the company did nothing wrong, CRST provided a copy of its Independent Contractor Manual. Defendants' Memorandum, Exh. D-1. CRST states that "the manual clearly sets forth the trucking regulations and the expectations CRST has for its independent contractors. In fact, the [Manual] specifically states that: . . . You will have no

---

[1] Nabors claims that at the time of his accident, CRST was still using paper log sheets to keep track of drivers' hours, while "each of the companies that Plaintiff had previously worked for as a truck driver had instituted a policy of utilizing computer monitoring of driver time whereby a GPS tracking device was placed in the truck, allowing the company to know how many hours the driver had been on the road. Plaintiff's Memorandum, p. 2. Nabors implies that this fact is circumstantial evidence that CRST "maintained a culture of noncompliance with Federal Trucking Regulations . . . ." *Id.*

reason to falsify your logs at CRST. False logs could lead up to and include cancellation of lease. . . . Log it how you do it, when you do it, and where you do it and you will not have a problem." *Id.*, pp. 12-13. CRST then claims that "there is ample evidence to suggest that CRST does not maintain a culture of non-compliance, [and] the only evidence to support Nabors' cause of action against CRST are unsupported conspiracy theories littered with speculation and conjecture." *Id.*

In his response brief, Nabors insists that there is more to the story than is set forth in the deposition excerpts cited by CRST, and references other portions of his testimony to support his allegation that CRST was negligent. Nabors points to the following statements:

1. CRST "constantly stressed the importance of delivering loads on time and making the company money." Plaintiff's Memorandum, p. 10 (citing Nabors Deposition, DE 24, p. 55).

2. CRST "maintained a culture in which drivers were allowed to do whatever they needed to do to deliver loads within the time restraints set by Defendant, including working more hours than allowed by federal regulations." *Id.*, p. 11.

3. "[T]he consequence of not making deliveries on time was that drivers could either lost the opportunity to get loads in the future or lose their trucks, thereby losing their livelihood." *Id.* (citing Deposition, p. 59).

4. CRST "often asked Plaintiff to alter his logs so that the logs would show he was in compliance with the relevant regulation when he was not." *Id.* (citing Deposition, p. 64).

5. Nabors "felt that he was pressured into driving hours in excess of what federal regulations allowed and fudging his logs so that he could continue driving for Defendant in order to provide for his family." *Id.* (citing Deposition, p. 69).

6. Nabors insists that CRST's "agents including the dispatchers who scheduled routes knew that

Plaintiff and other truckers were driving hours in excess of the hours allowed by federal regulations." *Id*. (citing Deposition, p. 65).

7. Nabors claims that CRST's "dispatchers continued to offer and assign routes to Plaintiff, knowing that he could not drive the hours necessary to deliver in accordance with the schedule and at the same time comply with federal regulations." *Id*.

8. Nabors states that he "told one of Defendant's dispatchers on multiple occasions that he was worried about exceeding driving requirements. However, the dispatcher brushed him off and said 'I don't want to hear it.'" *Id*., p. 12 (citing Deposition, p. 69).

9. Nabors contends that CRST's alleged willingness to ignore the hourly driving limits set forth in federal regulations forced Nabors into a situation where he "had no option other than to 'run hard' and violate federal trucking regulations on behalf of Defendant or suffer the consequences." *Id*., p. 13 (citing Deposition, p. 59).

In its reply brief CRST correctly points out that "[t]he Seventh Circuit has held that a plaintiff's self-serving testimony upon his own opinion [sic] standing alone is insufficient to create a genuine issue of material fact." Defendants' Reply, DE 25, p. 5 (citing *Tyler v Runyon*, 70 F.3d 458, 466 (7th Cir. 1995)). CRST reiterates its argument that "Nabors' theory of liability against CRST is based entirely upon speculation and bald conclusory allegations. . . . The 'facts' cited by the Plaintiff in response to CRST's Motion for Summary Judgment are nothing short of baseless conspiracy theories and unsupported conclusory statements that are merely the Plaintiff's perspective." *Id*., p 6. But CRST's attempt to characterize Nabors' deposition testimony as nothing more than bald conclusions and conspiracy theories goes too far. CRST bases its argument in large part on the case of *Briggs v. Finley*, 631 N.E.2d 959 (Ind.Ct.App.

1994). In *Briggs*, the plaintiff brought a negligence suit against the defendant after plaintiff was injured by a horse that escaped from the defendant's property. Briggs alleged that Finley was negligent and based that allegation on the theory "that an employee of the defendant was disgruntled or had been reprimanded and that the employee retaliated by unlocking the fence gate allowing the horses to get loose." Defendants' Memorandum, p. 10. In that case, as CRST notes, "[t]he trial court . . . noted that the plaintiff's theory was not supported by any evidence but rather was supported entirely by mere conjecture. For that reason, the court held that a speculative 'theory' with no affirmative evidence cannot create a genuine issue of material fact and, therefore, cannot defeat summary judgment." *Id*.

But while Briggs' allegations were determined to be complete conjecture, Nabors' allegations are quite different in nature. While he doesn't present a "smoking gun" that proves that CRST ignored or turned a blind eye to violations of federal regulations, his allegations are based on much more than mere conjecture and certainly don't sink to the level of a "conspiracy theory." While much of the evidence Nabors presents at this stage in the proceedings could fairly be characterized as circumstantial rather than direct, he points out that "[a] Plaintiff can prove negligence by using only circumstantial evidence." Plaintiff's Memorandum, p. 10 (citing *Foddrill v. Crane*, 894 N.E.2d 1070, 1075 (Ind.Ct.App. 2008)) ("'It is a well-settled principle that negligence can be proven by circumstantial evidence alone.'") (quoting *Thomas v. State,* 698 N.E.2d 320, 324 (Ind.Ct.App. 1998), *trans. denied*). Nabors testified in his deposition that CRST maintained an atmosphere or culture that encouraged drivers to be on duty beyond the number of hours proscribed by federal regulations, that dispatchers who assigned routes knew or should have known that such violations were occurring or likely to occur, and that he brought the matter

15

to the attention of at least one CRST dispatcher on more than one occasion. These statements by Nabors, made under oath during his deposition, are sufficient to raise a genuine issue regarding the element of breach of duty. In fact, what is present here is a quintessential credibility issue. Nabors alleges that CRST knowingly and routinely allowed or encouraged its drivers to drive more hours than mandated by law. CRST says Nabors is making it all up. Only a jury can resolve this issue and, therefore, summary judgment in favor of CRST is inappropriate.

## CONCLUSION

For the reasons discussed above, the court concludes that genuine issues of material fact exist in this case and defendants' motion for summary judgment is therefore DENIED.

Date: August 25, 2015.

/s/ William C. Lee  
William C. Lee, Judge  
United States District Court  
Northern District of Indiana